ALFRED W. BOOTH & BROTHER, a corporation,

*v.*

MAYOR AND COMMON COUNCIL OF BAYONNE et al.

[Decided January 31st, 1914.]

1. This court is without jurisdiction to maintain a delinquent tax-payer's suit to restrain a tax collector from making sale of the complainant's real estate under the General Tax act of 1903, and subsequent related acts. *Comp. Stat. p. 5075.*

2. In this state taxes become liens on property solely from express legislation, and can be collected only in the manner provided by statute.

3. By the express language of the charter of the city of Bayonne (*P. L. 1872 p. 686*), the taxes assessed on the complainant's personal property is made a lien on its real estate, and it appearing that the defendant tax collector is proceeding to enforce collection thereof as well as the arrearages due upon the complainant's real estate strictly in the manner provided by the charter, the complainant is not entitled to any relief against the defendant on that ground alone, even if the subject-matter of the suit is within the jurisdiction of this court.

4. But the Revised Tax act of 1903 entitled "An act for the assessment and collection of taxes" (*Comp. Stat. p. 5075*), supersedes the Bayonne charter upon this subject, because it contains a complete scheme of local taxation for the whole state, and must be followed as far as its provisions extend.

5. The taxpayer's remedy in case of an irregularity consisting of a tax collector's blending together in his notice of sale, taxes on the taxpayer's real and personal property, is by writ of *certiorari* out of the supreme court, and not by injunction out of the court of chancery.

This matter was referred to James Buchanan, as advisory master, who filed the following conclusions:

On bill taken *pro confesso* and order for proofs, &c.

*Mr. Randolph Perkins,* for the complainant.

This is a suit by a delinquent taxpayer to restrain a city tax collector from making sale of the complainant's real estate

under the General Tax act of 1903, with supplements and subsequent related acts. *Comp. Stat. p. 5075.*

The complainant is a corporation seized of lot 1, block 444, in the Fourth ward, on Orient street, in Jersey City, upon which the taxes assessed in 1909 remain unpaid, and being so unpaid, the defendant city collector proceeded to enforce collection under the provisions of the general act relating to taxes and assessments hereinbefore recited, and in the advertisement of sale stated the amount of arrearages of tax, interest and expenses to be $1,266.41, which sum includes taxes assessed for the same year upon $50,000 worth of personal property of the complainant.

The sale was advertised to take place on February 26th, 1913, and on February 13th of that year the complainant made a legal tender to the said defendant collector of $55, being the full amount due for the tax on said real estate for 1909, together with all interest and cost of advertisement up to date, but the collector refused to accept the same unless at the same time the taxes on the personal property of the complainant of the assessed valuation of $50,000 were also paid; and thereupon on the next day, February 14th, 1913, this bill was filed to restrain the sale thus advertised.

In this state taxes become liens on property solely from express legislation, and can be collected only in the manner provided by statute. *Linn* v. *O'Neil (1892), 55 N. J. Law 58.*

The charter of Bayonne (*P. L. 1872 p. 686*) is as follows upon this subject:

"49. And be it enacted, *that personal taxes and taxes upon goods and chattels* which shall hereafter be levied or assessed in the city of Bayonne against any person or persons, *shall be and remain a lien on all the lands and real estate* of such person or persons within this said city; and all taxes and assessments which shall hereafter be levied, assessed or made upon any lands, tenements or real estate situated in the city of Bayonne, shall be and remain a lien thereon until paid, * * * and that if the full amount of any such tax or assessment shall not be paid and satisfied within the time limited and appointed by the said board for the payment thereof, it shall be and may be lawful to cause such lands, tenements or real estate to be sold by public auction for the shortest term for which any person will agree to take the same and pay such tax or assessment, or the balance thereof remaining unpaid, with the interest and penalty thereon, and all costs, charges and expenses," &c.

It thus appears from the express language of the city charter that the taxes assessed on the personal property of the complainant is made a lien on its real estate, and that the defendant collector is proceeding to enforce collection thereof as well as of the arrearages due upon the complainant's real estate strictly in the manner provided by the charter, so that the complainant is not entitled to any relief against the defendant on that ground alone, even if the subject-matter of the suit is within the jurisdiction of this court.

But, assuming in the next place, that the Revised Tax act of 1903 entitled "An act for the assessment and collection of taxes" (*Comp. Stat. p. 5075*), supersedes this section of the Bayonne charter, because it contains a complete scheme of local taxation for the whole state and must be followed as far as its provisions extend, as stated by Judge Black in his work *"New Jersey Law of Taxation"* (edition of 1906, page 192), it is important to note the pertinent provisions of the Revised Tax act on this same subject.

The forty-second section of the Revised Tax act (*Comp. Stat. p. 5125*), with respect to delinquency and the form of the tax bill, provides that taxpayers who do not pay on or before the 20th day of December, "will be proceeded against as delinquent;" and further provides, that the notice to be sent by the tax collector to the taxpayers

"shall be written or printed and may be in the form of a tax bill; and shall set forth the number of acres or lots assessed to the taxpayer, the valuation of his real and of his personal property, the rate per dollar and the total tax," &c.

The forty-third section of the Revised Tax act (*Comp. Stat. p. 5126*) provides, with respect to the non-payment of personal taxes, that

"it shall be the duty of the collector * * * forthwith after the twentieth day of December to enforce the payment of all taxes by distress and sale of any of the goods and chattels of the delinquent in the county, * * * if goods and chattels of the delinquent cannot be found, or not sufficient to make all the money required to pay taxes on *personal property* and poll tax and dog tax, then it shall be the duty of the collector * * * to take the body of the delinquent," &c.

And the forty-ninth section of the Revised Tax act (*Comp. Stat. p. 5129*) provides that

"all unpaid taxes on real estate, with interest, penalties and costs of collection, shall be, on and after the twentieth day of December next after the assessment, a first lien on the land on which they are assessed," &c.

And the fifty-first section of the Revised Tax act (*Comp. Stat. p. 5132*) provides, with respect to notice of tax sales,

"that the collector shall enforce the tax lien by selling the land or any part thereof sufficient for the purpose; he shall give public notice * * * stating the names of delinquents and the land to be sold * * * and *the amount of the delinquent taxes thereon.*"

The sixty-sixth section of the Revised Tax act repeals "all acts, general and special, inconsistent with the provisions of this act," but the Revised Tax act does not contain any provision making taxes on personal property a lien on the real estate.

In pursuance of the provisions of the Revised Tax act the defendant tax collector sent to the complainant a tax bill for the year 1909, in conformity with the requirements of the forty-second section of the statute, blending together the taxes on the real and personal property of the complainant (and there is nothing in that section prohibiting such blending in the tax bill); and the tax collector purporting to conform to the fifty-first section of this general act gave public notice of sale, also blending together in such notice of sale the taxes on the complainant's real and personal property, instead of separating the same and confining such sale to the amount assessed in respect to the complainant's land, thus failing to give effect to the word "thereon" in this last-mentioned section of the statute which confines the sale of land to the payment of "the delinquent taxes thereon."

It thus appears, from an examination of the Revised tax act, and the acts of the tax collector in pursuance thereof, that the real complaint of the complainant is that of a threatened sale for an irregularity of the tax collector in blending together in his notice of sale taxes on the real and personal property of the complainant, as described in the sixtieth section of the general

act (*Comp. Stat. p. 5138*), relative to the setting aside of sales of land for specified irregularities, which is in these words:

"No sale of land for delinquent taxes hereinbefore or hereafter made shall be set aside by reason of the blending together taxes on real and personal property, but the sale shall be sustained as to the real property subject to the right to redeem upon payment of the amount of the lien thereon."

And this suit has been instituted to test the question whether a lien can be established upon the complainant's land for taxes assessed against its personal property on account of this irregularity of the tax collector.

With respect to the taxpayer's remedy · in case of an irregularity of the kind now under notice, and in what court it must be sought, Mr. Black, in his work above cited, says:

"Chief-Justice Beasley, speaking for the court of errors and appeals, in *Mayor, &c., of Jersey City* v. *Lembeck* (*1879*), *31 N. J. Eq. 255, 267*, said: 'Neither will it be gainsaid that it is, and always has been, one of the prerogatives of the supreme court of this state to supervise the proceedings and to correct the errors of all inferior tribunals, and of persons and parties exercising particular legal functions; the practice is so fixed, and the adjudications so clear upon the point, that it would be a mere waste of time to do more than state it as an *admission*. And the principal mode in which this power is put forth is by the effect and comprehensive writ of *certiorari*.'" See, also, cases cited in *Black. supra, § 282 note (15)*.

Judge Black, in his work above cited, section 295, says (and his statement is sustained by numerous cases cited in the footnotes):

"Where the tax or assessment is merely irregular, as distinguished from being void, a bill in equity will not lie. The general principle is clear and well established, that before an injunction will issue from the court of chancery to restrain the collection of taxes, the right to such injunction must be based strictly upon some peculiar ground of equity jurisdiction, the case must present some special circumstances attending the injury threatened, before the court will allow such injunction ·to issue. The reason underlying this principle is that courts interfere reluctantly with the collection of public revenues on the ground of public policy. The United States supreme court has said in relation to state taxes, that neither illegality nor *irregularity in the proceedings,* nor error or excess in the valuation, nor the hardship or injustice of the law, pro-

vided it is constitutional, nor any grievance which can be remedied by a suit at law, either before or at the payment of the taxes will authorize an injunction against its payment."

And before the enactment of the General Tax act this court decided, in *Jewell* v. *West Orange (1883), 36 N. J. Eq. 403*, that no ground of equity jurisdiction existed because the sale was made for taxes on the land sold, blended with taxes on personalty.

The want of jurisdiction in this class of cases was recognized and declared by Vice-Chancellor Stevenson, in the recent case of *Roe* v. *Mayor, &c., of Jersey City (1912), 80 N. J. Eq. 35*, a suit in which the bill prayed the court in the exercise of its general jurisdiction to enjoin the collection of taxes, &c.

There, on the opening of the hearing, the vice-chancellor called the attention of counsel to the question whether any case was presented by the bill for equitable cognizance, and, in commenting on the state of the pleadings, said, amongst other things (at p. 37) : "If a determination and a decree in form will be in accordance with the methods pursued by courts of equity, then at the end of the trial the court will not ordinarily, of its own motion, turn the parties away and render all their litigation abortive, but the court can always, for its own protection, for the maintenance of our dual system, whenever necessary to keep sharply distinguished the functions of the law courts and equity courts, of its own motion, decline to determine a purely legal controversy, simply because the parties have seen fit to endeavor to impose that duty upon the court.

"This is the sort of a case, in my judgment, where a court of equity should be very slow to intervene—very slow to exercise jurisdiction which belongs to a court of law, merely because the parties have not made objection. This bill seeks to have the court of chancery interfere with the collection of taxes in the city of Jersey City. Courts of equity intervene with great reluctance—all courts do, in fact—with the collection of public revenues. * * * Now, when you come to the case that is presented by the bill, if there is any case, it is purely one of legal cognizance. The industrious and astute counsel for complainant had his attention called particularly to the point, 'What feature of this case gives equitable cognizance?' and no answer is pre-

sented to the question. All the defences pointed out are legal defences. \* \* \* A court of equity will not do that sort of work, and will not do it even though the parties seek to impose that duty upon it."

And the vice-chancellor there referred to *Jersey City* v. *Lembeck, supra,* taking occasion to say: "Of course, counsel are entirely familiar with the very great effect that decision has had upon the practice under that statute (*i. e.,* 'An act to quiet titles') in this court."

And the vice-chancellor referred to *Goodwin* v. *Millville* (*1908*), *75 N. J. Eq. 270,* which is also a court of errors and appeals decision reiterating the doctrine declared in *Jersey City* v. *Lembeck, supra.*

In *Goodwin* v. *Millville, supra,* it was sought to justify the interference of the court of equity upon the ground of the prevention of a multiplicity of suits, but the court of errors and appeals repudiated that ground, saying: "The bill appears to have been filed by the complainant in his own behalf only, and there is no indication that any other person is threatening suit." See, also, *Berdan* v. *Passaic,* an unreported case decided August 20th, 1913.

A concrete example of the actual exercise of the superintending and correcting power of the supreme court in matters of taxation, in "blending" cases, is afforded by the case of *Linn* v. *O'Neil, supra,* where that court awarded a writ of *mandamus* to compel a tax collector to accept unpaid taxes assessed upon real estate, with interest, and where the collector had refused to accept the same on the ground that the taxes assessed upon the personal property of the taxpayer were a lien upon the land there in question; another such example is the case of *Hasbrouck Heights Co.* v. *Lodi* (*1901*), *66 N. J. Law 102,* where two tracts of land were separately assessed, one of three hundred acres on which the tax levied was $23.80, and the other a tract of fifty acres, on which the tax imposed was $4.92, and the two sums were added together and both properties were sold for the two sums; and there it was held on *certiorari* to set aside the sale for taxes that where two separate tracts of land are separately assessed for taxes, each tract must be sold by itself for the unpaid tax on it,

so that the person entitled to redeem after the sale may exercise his right to do so without paying the sum paid at the tax sale for both properties.

Of course, it is to be noted, that in the latter case the proceedings reviewed by *certiorari* had been perfected by a tax sale, which is necessary before that writ will issue. *East Orange* v. *Hussey, 70 N. J. Law 244.*

The bill should be dismissed for want of jurisdiction.

WALKER, CHANCELLOR.

A decree will be made in conformity with the advice contained in the opinion of Advisory Master Buchanan, which is hereby adopted as the opinion of the court.